UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RUDOLPH BETANCOURT, Individually, :
                                   :
          Plaintiff,               :
                                   :
vs.                                :    Case No.
                                   :
RSLLC-ORLANDO DOWNTOWN             :
HOTEL, LLC, a Delaware Limited Liability :
Company,                          :
                                   :
          Defendant.               :
_____/

## COMPLAINT
### *(For Injunctive Relief)*

Plaintiff, RUDOLPH BETANCOURT, Individually, and on behalf of all other mobility impaired individuals similarly situated, (sometimes referred to as "Plaintiff"), hereby sues the Defendant, RSLLC-ORLANDO DOWNTOWN HOTEL, LLC, a Delaware Limited Liability Company, (sometimes referred to as "Defendant"), for Injunctive Relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.* ("ADA").

1.     Plaintiff, Rudolph Betancourt, resides in Fenwick, MI, in the County of Montcalm.

2.     Defendant's property, DoubleTree by Hilton Hotel Orlando Downtown is located at 60 S. Ivanhoe Blvd., Orlando, FL 32804, in the County of Orange.

3.     Venue is properly located in the Middle District of Florida because venue lies in the judicial district of the property situs.  The Defendant's property is located in and does business within this judicial district.

4.     Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* *See also*, 28 U.S.C. § 2201 and § 2202.

5.     Rudolph Betancourt is a Michigan resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.  Mr. Betancourt is a double amputee who uses either prosthetic devices and/or a wheelchair for mobility.

6.     Mr. Betancourt regularly drives to South Florida from Michigan, where he resides. While driving from Michigan to South Florida, Mr. Betancourt regularly visits Orlando, FL along his route to South Florida, for vacation and to visit his cousin who lives nearby, and also to enjoy the weather, the plethora of tourist attractions, and dining establishments that the area offers, and to advocate for disability rights.

7.     Mr. Betancourt stayed as a hotel guest at the subject hotel on July 21, 2022, and he intends to return to the subject hotel if the hotel is made accessible for his use on July 5, 2023 pursuant to a confirmed reservation, or sooner, to avail himself of the goods and services at the property and to confirm that the property is brought into compliance with the ADA.  He also intends to continue coming to

Orlando, FL as a resting stop on his regular trips to South Florida.

8.     The barriers to access at the subject property have endangered his safety.

9.     Defendant owns, leases, (or leases to), or operates a place of public accommodation as defined by the ADA and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant is responsible for complying with the obligations of the ADA.

10.     According to the public records of Orange County, the subject hotel was constructed on 1985, and the Defendant acquired same on November 17, 2009.

11.     The subject property, DoubleTree by Hilton Hotel Orlando Downtown, is operated by a private entity whose operation affects commerce and is a public accommodation as defined by the ADA and its implementing regulations.   *See*, 28 C.F.R. § 36.104.

12.     Plaintiff has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to the property as described.   Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant. Plaintiff desires to visit the DoubleTree by Hilton Hotel Orlando Downtown, not only to avail himself of the goods and services available at the property, but to assure himself that this property is in compliance with the ADA so that he and others

similarly situated will have full and equal enjoyment of the property without fear of discrimination.

13.    The Defendant has discriminated against the individual Plaintiff by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182, *et seq.*, as described in paragraph 14.

Title III prohibits the failure to design and construct hotels built for first occupancy after January 26, 1993, to be readily accessible to and useable by in individuals with disabilities in accordance with the ADA Standards for Accessible Design (ADA Standards), 28 C.F.R. part 36, app A 42 U.S.C. § 12182(a)(1); 28 C.F.R. 36.401, 36.406(a).

Title III prohibits the failure to make alterations to hotels in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and useable by individuals with disabilities in accordance with the ADA Standards.  42 U.S.C. § 12183(a)(2); 28 CFR §§ 36.402, 403, 36.406(a).

Structures that existed before January 26, 1992, or facilities that the present owner did not design or construct, and which have not been altered since that date, need not meet the same design and implementation standards as facilities build after January 26, 1993.  In such cases, the ADA states that discrimination includes a private entity's "failure to remove architectural barriers . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv) "Where removal is not readily

achievable," failure of the entity to make goods, services and facilities "available through alternative methods if such methods are readily achievable," may constitute discrimination under the ADA.  42 U.S.C. § 12182 (b)(2)(A)(iv).

The ADA defines "readily achievable as "easily accomplishable and without much difficult or expenses." 42 U.S.C. §12181(9)

Congress included in the ADA factors to be considered in evaluating whether removal of a barrier is "readily achievable."  These factors are (1) nature and cost of the action; (2) overall financial resources of the facility or facilities involved; (3) number of persons employed at such facility; (4) effect on expenses and resources; (5) impact of such action upon the operation of the facility; (6) overall financial resources of the covered entity; (7) overall size of the business of a covered entity; (8) the number, type, and location of its facilities; (9) type of operation or operations of the covered entity, including composition, structure, and functions of the workforce of such entity, and (10) geographic separateness, administrative or fiscal relationship of the facility or facilities in question to the covered entity.  Garthright-Dietrich v. Atlanta Landmarks, Inc., 452 F. 3d 1269, 1272-73 (11th Cir. 2006)

The obligation to engage in readily achievable barrier removal is a continuing one.  Over time, barrier removal that initially was not readily achievable may later be required because of changed circumstances.  DOJ ADA Title III Technical Assistance Manual, Section III-4.4400 Continuing obligation.

14.     A preliminary inspection of the DoubleTree by Hilton Hotel Orlando Downtown has shown that violations exist.   These violations that Plaintiff has personally encountered or observed include, but are not limited to:

A.     <u>Passenger Loading Zone</u>

1.     The Plaintiff had difficulty traversing the passenger loading zone as there is no marked access aisle or signage. Violation: Passenger loading shall provide access aisles adjacent to the vehicle pull-up space. Access aisles shall adjoin an accessible route and not overlap the vehicular way, in accordance with §503.3 of the 2010 ADA Standards. Recommendation: Provide a compliant marked access aisle that is adjacent to the vehicle pull-up space. Estimated Cost: $500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §503 and §503.2 of the 2010 ADA Standards - Passenger Loading Zones, Access Aisles.

B.     <u>Accessible Routes</u>

1.     The slope of the curb ramp flares at the passenger loading zone exceeds the maximum of 10% making it difficult for the Plaintiff to traverse the area. Violation: Where provided, curb ramp flares shall not be steeper than 1:10 to comply with §406.3 of the 2010 ADA Standards. Recommendation: Modify the flares to a slope of less than 10%. Estimated Cost: $2,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §406 of the 2010 ADA Standards - Curb Ramps.

2.     The slope of the ramp leading to the lobby is greater than 8.33% making it difficult for the Plaintiff to navigate. Violation: Ramp runs shall have a running slope not steeper than 1:12 to comply with §405.2 of the 2010 ADA Standards. Recommendation: Modify the slope of less than 8.33% Estimated Cost: $3,500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §405 of the 2010 ADA Standards - Ramps.

3.   There are no handrails provided for both sides of the ramp leading to the lobby as required by the 2010 ADA Standards making it difficult for the Plaintiff to traverse the ramp. Violation: Handrails shall be provided on both sides of stairs and ramps in accordance with §505.2 of the 2010 ADA Standards. Recommendation: Install handrails on both sides of the ramp. Estimated Cost $150/ running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

4.   The height of the handrail gripping surface for the ramp leading to the lobby exceeds the maximum requirement of 38 inches making it difficult for the Plaintiff to utilize. Violation: Top of gripping surfaces of handrails shall be 38 inches maximum vertically above walking surfaces and ramp surfaces. Handrails shall be at a consistent height above walking surfaces and ramp surfaces as required in §505.4 of the 2010 ADA Standards. Recommendation: Install handrails with the tops of the gripping surfaces between 34 inches minimum and 38 inches maximum above the walking surface. Estimated Cost: $50/running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

5.   The handrail gripping surfaces that are provided for the ramp leading to the lobby are not continuous the entire length of the ramp and are obstructed along the top. The bottoms of the handrail gripping surfaces are obstructed for more than 20% of their length contrary to the requirements of the Standards making it difficult for the Plaintiff to utilize. Violation: Handrail gripping surfaces shall be continuous along their length and shall not be obstructed along their tops or sides. The bottoms of handrail gripping surfaces shall not be obstructed for more than 20 percent of their length. Where provided, horizontal projections shall occur 1-1/2 inches (38 mm) minimum below the bottom of the handrail gripping surface as required in §505.6 of the 2010 ADA Standards. Recommendation: Install handrails with the tops of the gripping surfaces where the tops, sides and bottoms are

unobstructed. Estimated Cost: $50/running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

6.    The rectangular shape of the handrail gripping surface on the ramp leading to the lobby does not comply with the requirement of the 2010 ADA Standards making it difficult for the Plaintiff to utilize. Violation: Handrail gripping surfaces with a non-circular cross section shall have a perimeter dimension of 4 inches minimum and 6-1/4 inches maximum, and a cross-section dimension of 2-1/4 inches maximum as required in §505.7.2 of the 2010 ADA Standards. Recommendation: Install handrails with the gripping surfaces complying with the Standards. Estimated Cost: $50/running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

7.    There is no extension provided for the handrail on the ramp leading to the lobby which does not comply with the requirement of the 2010 ADA Standards making it difficult for the Plaintiff to utilize. Violation: Handrail gripping surfaces shall extend beyond and in the same direction of stair flights and ramp runs in accordance with §505.10 of the 2010 ADA Standards. Recommendation: Install handrails with extensions complying with the 2010 ADA Standards. Estimated Cost: $250/extension. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

8.    There are no extensions provided for the handrails on the stairs leading to the patio in compliance with the requirement of the 2010 ADA Standards making it difficult for the Plaintiff to utilize. Violation: Handrail gripping surfaces shall extend beyond and in the same direction of stair flights and ramp runs in accordance §505.10 of the 2010 ADA Standards. Recommendation: Install handrails with the extensions complying with the 2010 ADA Standards. Estimated Cost: $250/extension. The removal of this barrier is readily achievable as this

barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

9.     The intermediate and top landings provided on the ramp from the patio to the facility are not level as required by the 2010 ADA Standards making it difficult for the Plaintiff to traverse the ramp. Violation: The slope of the intermediate landing and landing at the top of the ramp exceed the maximum of 2% allowed in §405.7.1 of the 2010 ADA Standards. Recommendation: Modify the ramp to include level landings as required. Estimated Cost: $275/ running ft.  The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §405 of the 2010 ADA Standards - Ramps.

10.    The dimensions of the change in direction at the top of the landing and the intermediate curved landing on the ramp from the patio to the facility is less than the minimum requirement by the 2010 ADA Standards making it difficult for the Plaintiff to traverse the element. Violation: Ramps that change direction between runs at landings shall have a clear landing 60 inches minimum by 60 inches minimum as required in §405.7.4 of the 2010 ADA Standards. Recommendation: Modify the ramp to create a 60 inch by 60 inch level landing as required. Estimated Cost: $275/running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §405 of the 2010 ADA Standards - Ramps.

11.    There are no handrails provided for both sides of the ramp from the patio to the lobby as required by the 2010 ADA Standards making it difficult for the Plaintiff to traverse the ramp. Violation: Handrails shall be provided on both sides of the ramp in accordance with §505.2 of the 2010 ADA Standards. Recommendation: Install handrails on both sides of the ramp. Estimated Cost: $150/running ft. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

C.   <u>Main Entrance</u>

1.   The Plaintiff had difficulty identifying the facility as accessible as there is no signage indicating accessibility posted at the main entrance. Violation: Designations - interior and exterior signage identifying permanent rooms and spaces shall comply with §703.5 of the 2010 ADA Standards, Recommendation: Provide signage at the front entrance. Estimated Cost: Less than $75. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §216.3 of the 2010 ADA Standards-Signs.

D.   <u>Lobby Men's Public Restroom</u>

1.   The lobby accessible men's restroom stall door does not provide pulls on both sides making it difficult for the Plaintiff to close. Violation: The toilet compartment stall door does not provide a door pull on the inside of the door as required in §604.8.1.2 of the 2010 ADA Standards, Recommendation: Provide door pulls on both sides of the stall door. Estimated Cost: Less than $50 each. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.8 of the 2010 ADA Standards - Toilet Compartments.

2.   The toilet is obstructing the clear floor space for an approach to the toilet seat cover dispenser making it difficult for the Plaintiff to utilize the element. Violation: Clear floor space for an approach to an element shall comply with §305.6 and shall not exceed the maximum height requirement in §308.2 and 308.3 of the 2010 ADA Standards. Recommendation: Remove or relocate toilet seat cover dispenser in a location with compliant clear floor space that does not exceed the maximum requirement of 48 inches above the finish floor to the operable mechanism. Estimated Cost: Less than $100 each. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604 of the 2010 ADA Standards - Water Closets and Toilet Compartments.

3.    The height of the reflecting surface of the mirror above the lavatory in the men's restroom exceeds 40 inches making it difficult for the Plaintiff to utilize the mirror. Violation: Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor as required in §603.3 of the 2010 ADA Standards. Recommendation: Relocate the mirror so that the reflecting surface is less than 40 inches above the finished floor. The top edge of mirrors should be 74 inches (1880 mm) minimum from the floor or ground. Estimated Cost: less than $100. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §603.3 of the 2010 ADA Standards - Toilet and Bathing Room Mirrors.

4.    The lavatory does not provide knee clearance with 8 inches of depth at 27 inches above the finish floor. Violation: The Plaintiff had difficulty utilizing the lavatory due to not providing knee clearance as required in §306.3 and §606.2 of the 2010 ADA Standards. Recommendation: Provide a new lavatory with compliant knee and toe clearance. Estimated Cost: $1,500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §606 of the 2010 ADA Standards - Lavatories and Sinks.

E.    **Interior Bar and Dining Area**

1.    The bar counter and tables are not at the compliant height of 34 inches maximum and 28 inches minimum above the finish floor. Violation: The bar counter and tables exceed the maximum height requirement of 34 inches and minimum height requirement of 28 inches making it difficult for the Plaintiff to utilize the tables in violation of §902.3 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the seating at the bar counter and tables at the compliant height as required. Estimated Cost: $300 per table and $2,000 for a compliant lowered section of the bar. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §902 of the 2010 ADA Standards - Dining Surfaces and Work Surfaces.

11

2.      The interior bar and dining area do not provide 5% of compliant seating as required. Violation: The interior bar counter and dining area do not provide 5% of compliant seating making it difficult for the Plaintiff to sit at the bar and tables in violation of §226.1 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the seating at the bar counter and tables with knee and toe clearance at the compliant height as required. Estimated Cost: $300 per table and $2,000 for a compliant lowered section of the bar. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §226 of the 2010 ADA Standards - Dining Surfaces and Work Surfaces.

F.    **Exterior Dining Area**

1.      The exterior dining area does not provide 5% of compliant seating as required. Violation: The exterior dining area does not provide 5% of compliant seating making it difficult for the Plaintiff to sit at the tables in violation of §226.1 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the seating at the tables with knee and toe clearance at the compliant height of 28 inches minimum and 34 inches maximum as required. Estimated Cost: $300 per table. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §226 of the 2010 ADA Standards - Dining Surfaces and Work Surfaces.

2.      The exterior dining tables do not provide knee clearance and toe clearance as required. Violation: The Plaintiff had difficulty utilizing the tables due to not providing knee clearance and toe clearance as required in §306.2 and §306.3 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the tables with compliant knee and toe clearance as required. Estimated Cost: $300 per table. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §306 of the 2010 ADA Standards - Knee and Toe Clearance.

G.   Pool Area

1.   The tables in the pool area do not provide knee clearance and toe clearance as required. Violation: The Plaintiff had difficulty utilizing the tables due to not providing knee clearance and toe clearance as required in §306.2 and §306.3 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the tables with compliant knee and toe clearance as required. Estimated Cost: $300 per table. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §306 of the 2010 ADA Standards - Knee and Toe Clearance.

2.   The exterior dining area does not provide 5% of compliant seating as required. Violation: The exterior dining area does not provide 5% of compliant seating making it difficult for the Plaintiff to sit at the tables in violation of §226.1 of the 2010 ADA Standards. Recommendation: Provide at least 5% of the seating at the tables with knee and toe clearance at the compliant height of 28 inches minimum and 34 inches maximum as required. Estimated Cost: $300 per table. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §226 of the 2010 ADA Standards - Dining Surfaces and Work Surfaces.

3.   The handrails do not provide extensions on the stairway that leads to the table which does not comply with the requirement of the 2010 ADA Standards making it difficult for the Plaintiff to utilize. Violation: The stairway's handrail gripping surface does not extend beyond and in the same direction of stair flights in violation of §505.10 of the 2010 ADA Standards. Recommendation: Install handrails with extensions complying with the 2010 ADA Standards. Estimated Cost: $250/extension. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §505 of the 2010 ADA Standards - Handrails.

H.   <u>Pool Area Men's Public Restroom</u>

1.   The water closet does not provide compliant clear floor space making it difficult for the Plaintiff to utilize. Violation: The clearance around a water closet shall be 60 inches minimum measured perpendicular from the side wall and 56 inches minimum measured perpendicular from the rear wall as required in §604.3.1 of the 2010 ADA Standards §604.3.2 of the 2010 ADA Standards also requires that no other fixtures or obstructions shall be located within the required water closet clearance. Recommendation: Reconfigure and remodel the restroom to provide the required clearances. Estimated Cost: $3,500-$5,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.3.1 of the 2010 ADA Standards - Water Closets.

2.   The toilet's rear wall grab bar is missing making it difficult for the Plaintiff to utilize. Violation: The toilet's rear wall grab bar is missing in violation of §604.5.2 of the 2010 ADA Standards. Recommendation: Install a new rear wall grab bar in the compliant location on the wall as required. Estimated Cost: $150-$300. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.5 of the 2010 ADA Standards - Grab Bars.

3.   The shower curb has a vertical change in level greater than the maximum requirement of ¼ inch making it difficult for the Plaintiff to utilize. Violation: The shower curb has a vertical change in level that exceeds the maximum requirement of ¼ inch in violation of §303.2 of the 2010 ADA Standards. Recommendation: Remove and reconstruct the entrance of the shower to provide an entrance with a compliant vertical change in level that does not exceed ¼ inch as required. Estimated Cost: $1,000-$2,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §303 of the 2010 ADA Standards - Changes in level.

4.   The urinal exceeds the maximum height requirement of 17 inches above the finish floor to the rim making it

14

difficult for the Plaintiff to utilize. Violation: The urinal is not in the compliant location 17 inches maximum above the finish floor to the rim in violation of §605.2 of the 2010 ADA Standards. Recommendation: Relocate or install a new urinal at the compliant height 17 inches maximum above the finish floor to the rim. Estimated Cost: $1,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §605 of the 2010 ADA Standards - Urinals.

I.   <u>Public Restrooms by Fitness Center</u>

1.   The apron is obstructing the knee clearance for an approach to the lavatory making it difficult for the Plaintiff to utilize. Violation: The apron does not provide the 27 inches of knee clearance for an approach to the lavatory as required in violation of §306.3.1 and §606.2 of the 2010 ADA Standards. Recommendation: Provide a lavatory with compliant knee and toe clearance for an approach to the lavatory as required. Estimated Cost: $1,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §306.3 of the 2010 ADA Standards - Knee Clearance.

2.   The height of the reflecting surface of the mirror above the lavatory in the men's restroom exceeds 40 inches making it difficult for the Plaintiff to utilize the mirror. Violation: Mirrors located above lavatories or countertops shall be installed with the bottom edge of the reflecting surface 40 inches maximum above the finish floor as required in §603.3 of the 2010 ADA Standards. Recommendation: Relocate the mirror so that the reflecting surface is less than 40 inches above the finished floor. The top edge of mirrors should be 74 inches (1880 mm) minimum from the floor or ground. Estimated Cost: less than $100. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §603.3 of the 2010 ADA Standards - Toilet and Bathing Room Mirrors.

3.   The Plaintiff had difficulty entering and exiting the toilet compartment stall because there are no door pulls on both sides of the stall door. Violation: A door pull complying

with 404.2.7 shall be placed on both sides of the door near the latch as required in §604.8.1.2 of the 2010 ADA Standards. Recommendation: Install u-shaped loop handles on both sides of the stall door 34 inches minimum and 48 maximum above the finish floor. Estimated Cost: Less than $100. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.8 of the 2010 ADA Standards - Toilet Compartments.

4.   The toilet compartment stall door is not self closing making it difficult for the Plaintiff to utilize. Violation: The toilet compartment stall door is not self closing as required in violation of §604.8.1.2 of the 2010 ADA Standards. Recommendation: Provide a compliant toilet compartment stall door with a self-closer as required. Estimated Cost: $500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.8 of the 2010 ADA Standards - Toilet Compartments.

5.   The toilet is obstructing the clear floor space for an approach to the toilet seat cover dispenser making it difficult for the Plaintiff to utilize the element. Violation: Clear floor space for an approach to an element shall comply with §305.6 and shall not exceed the maximum height requirement in §308.2 and §308.3 of the 2010 ADA Standards. Recommendation: Remove or relocate the toilet seat cover dispenser in a location with compliant clear floor space that does not exceed the maximum requirement of 48 inches above the finish floor to the operable mechanism. Estimated Cost: Less than $100 each. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604 of the 2010 ADA Standards - Water Closets and Toilet Compartments.

6.   The Plaintiff had to use caution when utilizing the lavatory due to the drainpipe and water supply lines underneath the lavatory being exposed and in need of insulation. Violation: The drainpipe and water supply lines underneath the lavatory are exposed and in need of insulation in violation of §606.5 of the 2010 ADA

Standards, whose resolution is readily achievable. Recommendation: Install insulation around the exposed drainpipe and water supply lines as required. Estimated Cost: Less than $100. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §606 of the 2010 ADA Standards - Lavatories.

J.   **Accessible Guestroom 908**

1.   The iron exceeds the maximum height requirement of 48 inches above the finish floor to the operable mechanism making it difficult for the Plaintiff to reach. Violation: The iron exceeds the maximum requirement of 48 inches above the finish floor to the operable mechanism in violation of §308.2 and §308.3 of the 2010 ADA Standards. Recommendation: Relocate the iron that does not exceed the maximum height of 48 inches and minimum height of 15 inches as required. Estimated Cost: Less than $50. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §308 of the 2010 ADA Standards - Reach Ranges.

2.   The security latch lock exceeds the maximum height requirement of 48 inches above the finish floor to the operable mechanism making it difficult for the Plaintiff to reach. Violation: The security latch lock exceeds the maximum requirement of 48 inches above the finish floor to the operable mechanism in violation of §308.2 and §308.3 of the 2010 ADA Standards. Recommendation: Relocate the security latch lock that does not exceed the maximum height of 48 inches and minimum height of 15 inches as required. Estimated Cost: Less than $50. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §308 of the 2010 ADA Standards - Reach Ranges.

3.   The chair is obstructing the clear floor space for an approach to the lamp making it difficult for the Plaintiff to utilize. Violation: The chair is obstructing the clear floor space for an approach to the lamp in violation of §305.3 of the 2010 ADA Standards. Recommendation: Relocate the lamp or chair to provide the compliant clear floor space for

an approach to the lamp as required. Estimated Cost: $0 minimum - $50 maximum. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §305 of the 2010 ADA Standards - Clear Floor or Ground Space.

4.   The toilet's side wall grab bar does not extend 54 inches from the rear wall making it difficult for the Plaintiff to utilize. Violation: The toilet's side wall grab bar does not extend 54 inches from the rear wall in violation of §604.5.1 of the 2010 ADA Standards. Recommendation: Install a side wall grab bar for the toilet in the compliant location as required. Estimated Cost: Less than $500. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.5 of the 2010 ADA Standards - Grab Bars.

5.   The flush control is not on the open side of the water closet making it difficult for the Plaintiff to utilize. Violation: The flush control is not on the open side of the water closet in violation of §604.6 of the 2010 ADA Standards. Recommendation: Install a new water closet with the flush control on the compliant open side as required. Estimated Cost: $1,000. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §604.6 of the 2010 ADA Standards - Flush Controls.

6.   A permanent foldable seat is not provided in the shower making it difficult for the Plaintiff to utilize. Violation: The shower does not provide a permanent foldable seat as required in transient lodging in violation of §608.4 of the 2010 ADA Standards. Recommendation: Install a permanent seat in the compliant location for a standard roll-in type shower compartment as required. Estimated Cost: $400-$800. The removal of this barrier is readily achievable as this barrier is cited as an example of readily achievable in §608.4 of the 2010 ADA Standards - Seats (Shower Compartment).

**H.**     Lack of Compliant Disabled Rooms Not Properly Disbursed

1.     The subject hotel lacks the required number of compliant accessible rooms and the compliant accessible rooms are not dispersed amongst the various classes of guest rooms, in violation of Section 224.5 of the 2010 ADAAG.

**I.**     Maintenance

1.     The accessible features of the facility are not maintained, creating barriers to access for the Plaintiff, as set forth herein, in violation of 28 C.F.R. § 36.211.

15.     All of the foregoing violations are also violations of the 1991 Americans with Disabilities Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

16.     The discriminatory violations described in paragraph 14 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's place of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.  The individual Plaintiff and all other individuals similarly situated have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.  The individual Plaintiff, and all others similarly-situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendant's place

of public accommodation in order to determine all of the areas of non-compliance with the Americans with Disabilities Act.

17.   Defendant has discriminated against the individual by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of their places of public accommodation or commercial facilities in violation of 42 U.S.C. § 12181 *et seq.*, and 28 C.F.R. 36.302 *et seq.* Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly-situated by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

18.   Plaintiff is without adequate remedy at law and is suffering irreparable harm.  Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.  Furthermore, the public interest would not be disserved by a permanent injunction.  Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205, and 28 C.F.R. 36.505.

19.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendant to alter the DoubleTree by Hilton Hotel Orlando Downtown to make those facilities readily accessible to and useable by the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

A.     The Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

B.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

C.     An award of attorney's fees, costs and litigation expenses pursuant to

42 U.S.C. § 12205.

D. The Order shall further require the Defendant to maintain the required assessable features on an ongoing basis, and to require the institution of a policy that requires Defendant to maintain its accessible features on an ongoing basis.

E. Such other relief as the Court deems just and proper and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully Submitted,

/s/John P. Fuller
John P. Fuller, Esq. (Lead Counsel)
FL Bar No. 0276847
Fuller, Fuller & Associates, P.A.
12000 Biscayne Blvd., Suite 502
North Miami, FL 33181
Telephone (305) 891-5199
Facsimile  (305) 893-9505
jpf@fullerfuller.com

Counsel for Rudolph Betancourt

22